## A93A1099. THE STATE v. HULL.
(435 SE2d 284)

BLACKBURN, Judge.

The State appeals from the trial court's decision to suppress the results of the state-administered chemical test of appellee, Kermit Hull's breath.[1] On appeal, the state asserts that the trial court's ruling was in error. We agree.

The vehicle which Hull was driving was pulled over by Officer Scott of the Forest Park Police Department for speeding on May 18, 1992. Officer Scott testified that upon speaking with Hull, he noticed that a strong odor of alcoholic beverage was on Hull's breath and person, that Hull's eyes were bloodshot and glassy, and that Hull was unsteady on his feet. Hull submitted to an alco-sensor field sobriety test, after which, Officer Scott determined that Hull was a less than safe driver. Thereafter, Officer Scott arrested Hull for driving under the influence of alcohol and put him in the back seat of the patrol car. It is undisputed that Officer Scott then advised Hull of his implied consent rights by reading the "Implied Consent Warning Card" to him. Hull then agreed to submit to a state-administered chemical test of his breath.

Prior to the administration of the breath test, Hull was given a form to review and sign which again explained his rights contained in OCGA §§ 40-5-55 (a) and 40-6-392 (a) (3). Hull signed the form and initialled the blank indicating that he agreed to take the state-administered breath test. The form contained three additional blanks next to statements which indicated the signator's refusal to take the state-administered test, or the signator's relinquishment of his or her right to an additional test, or the signator's desire to have an additional test administered. The three additional blanks were left unsigned by Hull.

Hull's counsel contended that even though defendant's rights had been previously read to him by Officer Scott, because the subse-

---

[1] While no formal written motion to suppress was filed by Hull, or his counsel, the State agreed to present its defense, to Hull's oral motion, during the call of the lower court's trial calendar.

quently used form on which Hull *could* have indicated whether or not he wanted an additional test was signed by Hull *before* taking the test, the State was required to again allow Hull to consider his options once he knew he had failed the test. It is uncontroverted that the form which he had previously reviewed, initialled and signed was not returned to Hull *after* he submitted to the state-administered test. Hull's counsel argued that no defendant could decide whether an additional test was necessary until after the results of the first test were obtained, because the first test results could be favorable to the defense, negating the necessity of an additional test. The trial court agreed and ruled that because Officer Scott used the above-described form, in addition to following the procedure of reading defendant's rights to him, that he should have returned the form to Hull after Hull failed the state-administered test, to allow Hull the opportunity to reconsider whether or not he wanted an additional test. This argument is without merit.

The State is required to explain the implied consent rights to the defendant at the time of arrest. "Once that duty is fulfilled by the officer, the statutory obligation is satisfied. Sworn testimony by the officer that such advice was given constitutes a prima facie showing of compliance." (Citation and punctuation omitted.) *State v. Griffin*, 204 Ga. App. 459, 461 (419 SE2d 528) (1992). In the present case, it is uncontroverted that the State fulfilled its burden not once, but twice. "The State is under no duty to show [Hull's] affirmative waiver of an additional chemical test." (Citations and punctuation omitted.) Id.

The trial court held that the State had read defendant his rights one time and "the law only requires that he be read his rights," which holding was correct. The court then held that where the State also gave to defendant the subject form which repeated the warnings and confirmed that defendant would take the state-administered test, *before* defendant took the test, the State thereby assumed a higher burden than is statutorily required because the form also had spaces where defendant could indicate whether or not he wished to have an independent test administered, which blanks were not completed by defendant, and the State should have "— given it back to him again after he took the test to see whether or not he —."

During the direct examination of Hull, Hull's counsel asked him, "At the time that you agreed to take the State test did you have any reason at that time to want a second test at the time you took it?" Hull responded, "Yes, I wanted one."

Hull also testified that prior to being incarcerated he requested that he be allowed to make a telephone call, which request was honored, and that *he did not request* an additional alcohol test of the arresting officer or the officers who processed him for incarceration.

Therefore, Hull's own testimony indicated that while he wanted

an additional test at the time he agreed to take the state-administered test, he did not communicate this desire at any time to either the arresting or processing officers, although he did state that he later asked a jailer for such test. The jailer did not testify and this alleged request was not a factor in the court's ruling.

The form signed by defendant was designed by the State to provide written proof that the State had advised the defendant of his rights and of the implied consent law of Georgia. The State has no duty to repeat the warnings and rights to defendant. *Parsons v. State*, 190 Ga. App. 803 (380 SE2d 87) (1989). We decline to adopt the additional burden imposed by the trial court.

*Judgment reversed. McMurray, P. J., and Johnson, J., concur.*

DECIDED AUGUST 20, 1993.

*Keith C. Martin, Solicitor, Elizabeth A. Baker, Assistant Solicitor*, for appellant.

*Paul S. Weiner*, for appellee.